# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| CONOCOPHILLIPS CO. | : | CIVIL ACTION |
| --- | --- | --- |
| v. | : | NO. 09-3842 |
| UNITED STEELWORKERS, LOCAL 10-234 | : | |

## MEMORANDUM

In this labor dispute, Plaintiff ConocoPhillips has moved for summary judgment, asking me to vacate an arbitrator's decision to reduce the level of discipline Conoco had imposed on one of its employees. Defendant, United Steelworkers, Local 10-234, has cross-moved for summary judgment, asking me to uphold the arbitrator's decision. Although I agree with the Union that the arbitrator could properly reduce the level of discipline, I also agree with the Company that in making his decision, the arbitrator was not entitled to rewrite the Parties' Collective Bargaining Agreement. Accordingly, I will modify the Arbitrator's Opinion.

## I.  JURISDICTION

I have jurisdiction under Section 301(a) of the Labor Management Relations Act to vacate or to modify an arbitration award. 29 U.S.C. § 185; see Newark Morning Ledger Co. v. Newark Typographical Union, Local 103, 797 F.2d 162, 167 (3d Cir. 1986) (agreeing with the district court's decision that it was "compelled to modify the award").

## II. LEGAL STANDARDS

### A. Summary Judgment

Upon motion of any party, summary judgment is appropriate "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must initially show the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986). An issue is material only if it could affect the result of the suit under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

In deciding whether to grant summary judgment, the district court "must view the facts in the light most favorable to the non-moving party," and take every reasonable inference in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265 (3d Cir. 2005). If, after viewing all reasonable inferences in favor of the non-moving party, "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial," and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Delande v. ING Employee Benefits, 112 Fed. Appx. 199, 200 (3d Cir. 2004). Granting summary judgment thus "avoid[s] a pointless trial in cases where it is unnecessary and would only cause delay and expense." Walden v. Saint Gobain Corp., 323 F.Supp. 2d 637, 641 (E.D. Pa. 2004) (quoting Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir.1976)).

B.  **Judicial Review Under the LMRA**

District courts have a limited and deferential role in reviewing arbitration awards arising from labor disputes. Pa. Power Co. v. Local Union No. 272, Int'l Bhd. of Elec. Workers, AFL-CIO, 276 F.3d 174, 178 (3d Cir. 2001) (citing United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987)). The district court must uphold an arbitration award that "draws its essence" from the parties' collective bargaining agreement "and is not merely [the arbitrator's] own brand of industrial justice." Misco, 484 U.S. at 36.

An award draws its essence from a collective bargaining agreement "if its interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." United Transp. Union Local 1589 v. Suburban Transit Corp, 51 F.3d 376, 379 -80 (3d Cir. 1995). See also Exxon Shipping Co. v. Exxon Seamen's Union, 993 F.2d 357, 360 (3d Cir. 1993) ("As a general rule, we must enforce an arbitration award if it was based on an arguable interpretation and/or application of the collective bargaining agreement, and may only vacate if there is no support in the record for its determination or if it reflects manifest disregard of the agreement, totally unsupported by principles of contract construction.") Thus, I must uphold an arbitration award that was derived from the collective bargaining agreement, even if I disagree with the arbitrator's conclusions. Brentwood Med. Assoc. v. United Mine Workers of America, 396 F.3d 237, 241 (3d Cir. 2005).

I am bound by the arbitrator's factual findings, provided that they have evidentiary support. See Misco, 484 U.S. at 36 ("[I]t is the arbitrator's view of the facts and of the meaning

of the contract that [the Parties] have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.").

The Third Circuit has cautioned, however, that the district court is neither "entitled nor encouraged simply to 'rubber stamp' the interpretations and decisions of arbitrators." Matteson v. Ryder Sys., Inc., 99 F.3d 108, 113 (3d Cir. 1996) (citations omitted). The arbitrator's authority to resolve a dispute is bound by the terms of the parties' collective bargaining agreement. See Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 744 (1981) ("An arbitrator's power is both derived from, and limited by, the collective-bargaining agreement.")

Section 301 of the LMRA confers on the district court the authority to modify an arbitration award that is unfaithful to the collective bargaining agreement. Newark Morning Ledger, 797 F.2d at 167. The Federal Arbitration Act also confers on the court authority to modify a labor arbitration award where, as here, the arbitrator "awarded on a matter not submitted to [him]." 9 U.S.C. § 11(b); see Misco, 484 U.S. at 41 n.9 (acknowledging "federal courts have often looked to the [FAA] for guidance in labor arbitration cases," particularly because Section 301(a) "empowers the federal courts to fashion rules of federal common law to govern [s]uits for violation of contracts between an employer and a labor organization" under the federal labor laws"). Under the FAA, any modification is entirely discretionary and should "promote justice between the parties." Andorra Servs. v. Venfleet, Ltd., 2009 U.S. App. LEXIS 26969 (3d Cir. 2009).

In sum, although my review of an arbitrator's decision must be deferential, I may vacate or modify the decision if I determine that he exceeded his authority under the parties' collective bargaining agreement. See Matteson, 99 F.3d at 113-14; Newark Morning Ledger, 797 F.2d at 167.

### III. BACKGROUND

ConocoPhillips is a Delaware corporation with its headquarters in Houston, Texas. *(Compl. & Answer ¶ 9.)* The Company operates an oil refinery in Trainer, Pennsylvania. *(Id.)* United Steelworkers, Local 10-234 is the exclusive collective bargaining representative for the employees' bargaining unit at the Trainer refinery. *(Compl. & Answer ¶ 11.)* At all relevant times, relations between the Parties were governed by a Collective Bargaining Agreement (CBA) effective since February 1, 2002. *(Doc. No. 13.)*

#### A. Mr. Bishop's Employment History

The Company hired Richard Bishop in September 2004 as a "B Pumper Operator" at the Trainer refinery. *(Compl. & Answer, ¶¶ 23, 24.)* After a six-month training program comprising basic safety classes and a series of written and field tests, Bishop was qualified as a "B Pumper Operator." *(Id. ¶ 26.)*

On November 9, 2005, Bishop issued safe work permits without reviewing the accompanying paperwork, necessitating a work stoppage until the permits were properly completed. *(Compl. & Answer, ¶¶ 27, 28.)* He received a verbal warning for this work rules violation. *(Id. ¶ 29.)*

In a subsequent disciplinary proceeding, Conoco determined that Bishop also violated work rules on October 26, 2005 by opening the wrong valve for a shipment of butane, creating a safety risk. *(Compl. ¶ 31-33.)* With evidentiary support, the Arbitrator found as a fact that Bishop and the Union did not receive the written warning issued to Bishop for this second work rules violation. *(Compl. Ex. B, Arb. Opinion and Award at 8.)*

On September 4, 2007, Bishop committed a third work rules infraction that resulted in the discipline challenged in the Arbitration. As found by the Arbitrator, Bishop failed to follow the proper three-part procedure for sampling an oil tank for certification. *(Compl. Ex. B, Arb. Opinion and Award at 8.)* When he met with his supervisor to discuss the incident, he did not deny taking the samples in violation of the prescribed procedure. (Compl. ¶ 39.) As a result of this failure to follow work rules, on September 18, 2007, the Company suspended Bishop for two days. *(Compl. ¶ 40.)* On September 21, 2007, the Union filed a grievance on behalf of Bishop, urging that the suspension was "too harsh." *(Compl. & Answer, ¶ 41.)*

### B. The Parties' Collective Bargaining Agreement

CBA Article 24 (entitled "Discipline") provides that Conoco may discipline employees for "just cause." *(Id., Art. 24.1.)* "Just cause" is not defined; rather, Article 24 states that "[c]ommitting a posted offense, failing to obey working rules, or unsatisfactory work performance may be cause for discipline." *(Id. Art. 24.3.)* The CBA requires Conoco to "issue to the Union a copy of any disciplinary letter placed in an employer's file." *(Id. Art. 24.4)* The CBA does not provide for or include any mention of "progressive discipline."

Article 25 sets out the "Grievance and Arbitration Procedure": a four-part process for hearing employee complaints that Conoco violated the CBA. *(Id. Art. 25.6.)* After three informal hearings, the dispute is submitted to arbitration before a member of the National Academy of Arbitrators. *(Id. Art. 25.8.)* Significantly, Article 25.8 provides that "[i]n reaching a decision, the arbitrator shall be restricted to *the specific terms and provisions of this agreement, and shall not add to, subtract from, or in any way alter any of the provisions of the Agreement*." *(Id.)* (emphasis supplied).

### C. The Arbitration Award and the Instant Litigation

On May 7, 2009, Arbitrator Robert E. Light conducted a hearing. *(Compl. & Answer, ¶ 43.)* The Parties stipulated that Mr. Light should decide the following questions: "Was there just cause for the two (2) day suspension imposed on Richard Bishop? *If not, what shall be the remedy?*" *(Id. ¶ 44)* (emphasis supplied).

Mr. Light issued his Arbitration Opinion and Award on July 22, 2009. *(Id. ¶ 46.)* He found that Bishop "violated the written and required operating procedures for obtaining certification samples," and that "[h]e knew what those procedures were and he simply did not follow them, offering no legitimate excuse for not doing so." *(Compl. Ex. B, Arb. Opinion and Award at 8.)* In his Opinion, the Arbitrator stated that

> while argument was made to the contrary by the Company, it is clear to this Arbitrator, that this Company follows the dictates of progressive discipline as respects discipline meted out to employees. That is to say, as was the case here, normally the sequence is an oral warning, a written warning, a penalty of some duration, perhaps a penalty of longer duration and subsequently, if

7

>no improvement is made, then termination.
>*(Id.)*

Once again, Mr. Light found that Bishop received a verbal warning for the November 5, 2005 violation. Having also found that Bishop never received a written warning for the October 26, 2005 offense, Mr. Light ruled that the "two (2) day disciplinary suspension [for the 2007 offense] was not the next 'building block' in the progressive disciplinary scheme." *(Id. at 9.)* Thus, the Arbitrator issued the following Award:

>There was not just cause for the two-day disciplinary suspension imposed on Richard Bishop. There was just cause for a written warning for the incident which occurred on September 4, 2007. Mr. Bishop shall receive two (2) days' pay, but his record shall reflect the fact that he received a disciplinary written warning for the incident on September 4, 2007.
>*(Id. at 10.)*

On August 21, 2009, Conoco filed its Complaint seeking to vacate the Arbitrator's Opinion and Award. Both sides have cross-moved for summary judgment. (Doc. Nos. 12, 14.)

## IV. DISCUSSION

### A. The Relief the Company Seeks

Conoco asks me to vacate Mr. Light's "Award," arguing that he did not have authority under the CBA to reduce Mr. Bishop's discipline. Yet, at the arbitration's outset, Conoco and the Union jointly asked Mr. Light to determine whether or not to reduce Mr. Bishop's two-day suspension ("If not, what shall be the remedy?"). *(Compl. & Answer, ¶ 43.)* The Company thus acknowledged that Mr. Light had the authority to make this determination.

In its Complaint, the Company alleged that the Arbitrator improperly "concluded that

ConocoPhillips was obliged to adhere to a five-part progressive discipline structure created by the Arbitrator himself. . . . The parties, however, never agreed to any such progressive discipline system." *(Compl. ¶ ¶ 50, 52.)* In asking me to vacate, Conoco argues as follows:

> Here, Arbitrator Light went well beyond interpreting the [CBA] to include some general term of progressive discipline. Instead, he prescribed a specific, five-step system . . . . The mere fact that progressive discipline schemes similar to the five-step system espoused by Arbitrator Light have been recognized [elsewhere] does not mean that [the CBA] . . . includes the imposition of a five-part progressive discipline scheme.
> *(Doc. No. 15 at 8-9.)*

It is apparent that the Company's true objection here is not to the Award itself – reducing Bishop's discipline to a written warning – but to the Arbitrator's means of reaching that decision: by suggesting in his Opinion that the CBA includes the five-step structure of progressive discipline "espoused by Arbitrator Light." *(Id.)* Accordingly, I will construe Conoco's Complaint as challenging that part of the Arbitrator's Opinion in which he conceives and implements the five-step structure. Pantry Pride, Inc. v. Retail Clerks Tri-State Pension Fund, 747 F.2d 169, 171 (3d Cir. 1984) (district courts may liberally construe complaints). This is, in effect, a request that I modify the Arbitrator's decision.

### B.    Employee Discipline Under the CBA

There is tension between two CBA provisions. Article 25.8 provides that the arbitrator is "restricted to the specific terms and provisions of this agreement, and shall not add to, subtract from, or in any way alter any of the provisions of the Agreement." *(CBA Art. 25.8.)* The Third

Circuit has called for strict enforcement of such provisions, and has vacated awards made in contravention of those provisions. See, e.g., Pa. Power Co. v. Local Union No. 272 of the Int'l Bhd. of Elec. Workers, AFL-CIO, 886 F.3d 46, 48-49 (3d Cir. 1989) ("[T]he arbitrator exceeds her authority if she deems arbitrable those issues whose resolution calls for the addition of new terms or conditions to the agreement.")

Labor arbitrators have authority, however, under "just cause" provisions like Article 24.1 to reduce discipline they believe is too harsh. Exxon Shipping Co. v. Exxon Seaman's Union, 73 F.3d 1287, 1297 (3d Cir. 1996). Moreover, the Third Circuit has held that an arbitrator may construe an undefined "just cause" provision – such as Article 24.1 – "to include a progressive discipline requirement." Arco-Polymers, Inc., v. Local 8-74, 671 F.2d 752, 756 (3d Cir. 1982). See also Suburban Transit Corp., 51 F.3d at 381 ("To the extent the arbitrator's award was based upon a theory that the parties intended 'proper cause' to incorporate some form of progressive discipline, that interpretation has some basis in the CBA."). In both decisions, the Court held that when a collective bargaining agreement does not include a definition of "just cause," the parties "bargained for contractual ambiguity." Id. at 380.

In construing Articles 24.1 and 25.8, an arbitrator may not read either provision out of the CBA. Barrentine, 450 U.S. at 744. Rather, the arbitrator must seek to reconcile these provisions in a manner consistent with the Parties' intent. Tanoma Min. Co., Inc. v. Local Union No. 1269, United Mine Workers, 896 F.2d 745, 747-48 (3d Cir. 1990).

The Suburban Transit Court– reviewing a collective bargaining agreement similar to that

presented here – held that the provision limiting the arbitrator's authority did not preclude the arbitrator from construing the "just cause" provision as including progressive discipline. See Suburban Transit, 51 F.3d at 381. Accordingly, like the arbitrator in Suburban Transit, Mr. Light appropriately determined that Article 24.1's "just cause" language included progressive discipline. Unlike the Suburban Transit arbitrator, however, Mr. Light went on to conceive and set out a five-step program of progressive discipline. *See Compl. Ex. B, Arb. Opinion and Award at 8-9* (the two-day suspension "was not the next 'building block' in the progressive disciplinary scheme," which should consist of "an oral warning, a written warning, a penalty of some duration, perhaps a penalty of longer duration and subsequently, if no improvement is made, then termination.")

No court has allowed a labor arbitrator to re-write the collective bargaining agreement he is charged with interpreting. In Pennsylvania Power Company, when the labor arbitrator disregarded a provision similar to Article 25.8 and thus amended the Parties' collective bargaining agreement to extend benefits to a class of employees not previously covered, the Third Circuit reversed, holding that the arbitrator "altered the Agreement in direct violation of its provision that he had no power to do so." Pa. Power Co., 276 F.3d at 179. See also United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960) ("The arbitrator created a limitation on [the company's] management rights that is not found in the Agreement. In so doing, the arbitrator's decision failed to draw its essence from the Agreement."); Appalachian Regional Health Care, Inc. v. United Steelworkers of America,

AFL-CIO, Local 14398, 245 F.3d 601, 605 (6th Cir. 2001), *cert. denied*, 534 U.S. 952 (2001) ("Even if we were to credit the arbitrator's construction of the Agreement . . ., we would still have to vacate the award as it imports notions not found in the Agreement itself.")

Had Mr. Light re-written the CBA to include the five-step progressive discipline structure he favors, this would have been an impermissible attempt to afford the Parties Mr. Light's "own brand of industrial justice." Misco, 484 U.S. at 36. Whether the CBA should include a three, five, or ten-step structure of progressive discipline – and the definition of each step – should be determined by collective bargaining, not by arbitrator fiat. It does not appear, however, that Mr. Light intended to re-write the CBA or to make the five-step structure a part of the CBA. Rather, the language Mr. Light employed ("*normally* progressive discipline would include . . . a penalty of some duration, *perhaps* a penalty of longer duration . . .") suggests that he intended his five-step structure to be merely illustrative. *(Compl. Ex. B, Arb. Opinion and Award at 8.)* Indeed, the Union describes that part of the Opinion as "dicta." *(Doc. No. 12 at 7.)* It is, nevertheless, possible to read Mr. Light's Opinion as incorporating into the CBA the five-step progressive discipline structure favored by Mr. Light. To eliminate any uncertainty or ambiguity in this respect, I will modify Mr. Light's Opinion to clarify the non-binding nature of his discussion of a specific progressive discipline regime.

### V.     CONCLUSION

Mr. Light had the authority to conclude that Article 24.1's undefined "just cause" provision includes the concept of progressive discipline. Moreover, in light of the Parties'

stipulation that the Arbitrator determine if the two-day suspension should be reduced, and Mr. Light's factual finding that Bishop had not previously received a written warning, Mr. Light also had the authority to reduce the two-day suspension imposed on Bishop to a written warning. Nothing in the CBA or the law, however, authorized Mr. Light to make a particular progressive discipline structure of his own creation a part of the CBA. Accordingly, I will confirm Mr. Light's Award and modify his Opinion to make clear that the five-step progressive discipline structure he describes is merely illustrative and is not required by or part of the CBA.

An appropriate Order follows.

**BY THE COURT.**

*/s/ Paul S. Diamond*

_____

**Paul S. Diamond, J.**